UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| VERSATA ENTERPRISES, INC., VERSATA, INC., VERSATA SOFTWARE, INC., AND VERSATA DEVELOPMENT GROUP, INC., | § | |
| Plaintiffs, | § | |
| v. | § | CAUSE NO. 1:12-cv-114 |
| DEFENDER INDUSTRIES, INC., | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**
**SEEKING DECLARATORY RELIEF**

Plaintiffs Versata Enterprises, Inc., Versata, Inc., Versata Software, Inc., and Versata Development Group, Inc. (the "Versata Parties" or "Plaintiffs"), file this Original Complaint against Defender Industries, Inc., and in support state as follows:

## I.
## Introduction

1. Defendant Defender Industries, Inc. ("Defender") has threatened to bring the Versata Parties into an ongoing AAA arbitration in Philadelphia, Pennsylvania[1] despite the fact that the Versata Parties never agreed, through contract or otherwise, to have claims against them resolved in arbitration.

[1] *Everest Software, Inc. (Claimant) v. Defender Industries, Inc. (Respondent); Defender Industries, Inc. (Respondent-Counterclaimant) v. Everest Software, Inc. (Counterclaim-Respondent);* before the AAA, Case No. 14 117 Y 01618 11.

2. The Philadelphia arbitration centers on a software implementation dispute between Everest Software, Inc. ("Everest") and Defender. Everest, a software firm, implemented a software system for Defender under an agreement the parties entered into in 2008 (the "Agreement"). *See* Agreement, Exhibit A. Defender failed to pay a number of invoices under the Agreement. As a result, Everest initiated the Philadelphia arbitration against Defender on October 31, 2011, pursuant to section 9.6 of the Agreement. *Id.* at section 9.6. Everest and Defender are the only signatories to the Agreement. *Id.* at page 8.

3. Defender then filed counterclaims against Everest on January 16, 2012. *See* Defender Answering Statement & Counterclaims, Exhibit B. In its counterclaims, Defender named the Versata Parties as counterclaim-respondents, along with Everest. A few days later, on January 25, 2012, the AAA announced that it would not administer the counterclaims brought by Defender against the Versata Parties, as the Versata Parties were not signatories to the Agreement and had not agreed to arbitration. The AAA also stated that the arbitrator, once appointed, could decide the matter if later raised by Defender.

4. Just before the arbitrator in the Philadelphia arbitration was appointed on January 27, 2012, Defender filed an amended version of its counterclaims with the AAA, confirming that it had dropped the Versata Parties from the arbitration. *See* Defender Amended Answering Statement & Counterclaims, Exhibit C. However, Defender made clear that it was doing so

without prejudice to re-filing those claims against the Versata Parties at a later date. *See* January 27 Defender Email to AAA, Exhibit D.

5. Defender does not have a valid, legal basis to bring outside, non-signatory parties, such as the Versata Parties, into the Philadelphia arbitration. The sole connection the Versata Parties have to the Philadelphia arbitration is that an affiliate of the Versata Parties, ESW Capital, LLC ("ESW"), owns Everest, the claimant in the Philadelphia arbitration. This tenuous link between the Versata Parties and Everest is an insufficient basis to justify initiating arbitration against the Versata Parties.[2] Moreover, Defender's claims against the Versata Parties (brought in its pre-amended counterclaims) completely lack merit, regardless of where they are brought.

6. As Defender refuses to confirm that it will not bring its arbitration claims against the Versata Parties in the future, the Versata Parties respectfully request this court to enter a declaratory judgment confirming that the Versata Parties (i) are not proper parties to the Philadelphia arbitration, and (ii) have no liability whatsoever in connection with any of Defender's arbitration claims brought in Defender's pre-amended counterclaims, whether later brought the Philadelphia arbitration or in court. The Versata Parties also seek all of their costs and fees in connection with this action.

[2] "The FAA . . . 'does not require parties to arbitrate when they have not agreed to do so.'" *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293-294 (U.S. 2002) (internal citations omitted). Moreover, "[a]rbitration agreements apply to nonsignatories only in rare circumstances." *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 358 (5th Cir. 2003). The Versata Parties are non-signatories, and none of these "rare circumstances" apply here.

## II.
## PARTIES

7. Plaintiff Versata Enterprises, Inc. is a Delaware corporation with its principal place of business at 6011 West Courtyard Drive, Austin, Texas 78730.

8. Plaintiff Versata, Inc. is a Delaware corporation with its principal place of business at 6011 West Courtyard Drive, Austin, Texas 78730.

9. Plaintiff Versata Software, Inc. is a Delaware corporation with its principal place of business at 6011 West Courtyard Drive, Austin, Texas 78730.

10. Plaintiff Versata Development Group, Inc. is a Delaware corporation with its principal place of business at 6011 West Courtyard Drive, Austin, Texas 78730.

11. Defendant Defender Industries, Inc. is a Connecticut corporation with its principal place of business at 42 Great Neck Road, Waterford, Connecticut 06385.  Plaintiff requests that summons be issued.

## III.
## JURISDICTION AND VENUE

12. This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332(a)(1), as this suit is between citizens of different states, and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest or costs.

13. This Court's personal jurisdiction extends to Defender because Defender availed itself of the privileges of conducting activities in Texas by filing arbitration claims against the Plaintiffs in the Philadelphia arbitration.  *See* Defender Answering Statement & Counterclaims, Exhibit B.

14. Venue is proper in the Western District of Texas, Austin Division, because venue is proper at the defendant's place of residence. 28 U.S.C.§1391(b)(1). A defendant corporation is deemed to be a resident in any district in which the defendant is subject to personal jurisdiction. 28 U.S.C.§1391(c)(2). As Defender is subject to personal jurisdiction in the Western District of Texas by virtue of the fact that it filed arbitration claims against Plaintiffs residing there, venue is proper.

15. Venue is further proper in the Western District of Texas because "a substantial part of the events or omissions giving rise to the claim occurred" in the Western District of Texas. 28 U.S.C.§1391(b)(2). First, Defendant has threatened improperly to force Plaintiffs residing in the Western District of Texas to defend arbitration claims from that district when Plaintiffs never agreed to arbitrate any such claims in the first place. Second, Defendant's supposed basis for being able to bring Plaintiffs into the Philadelphia arbitration is that the Plaintiffs engaged in certain activities in the Western District of Texas (described in paragraph 23 below) which Defendant believes give rise to various claims against Plaintiffs. Plaintiffs are seeking a declaration that those claims lack merit in this action. Accordingly, there is no question that venue in this action is proper in the Western District of Texas, Austin Division.

## IV.
## FACTS

16. The Versata Parties are part of a group of related companies that: (a) are owned by a common shareholder, (b) function as distinct legal entities, and (c) sometimes work together towards common business purposes. One of the Versata

Parties' affiliates, ESW, acquires financially struggling software companies and tries to make them financially viable. ESW works directly with the Versata Parties to help provide these acquired companies with various services and support, to help turn them around financially.

17. ESW acquired Everest, a software company, in such an acquisition in 2009. Neither ESW nor Everest is in a direct parent-subsidiary relationship with any of the Versata Parties.

18. A year before the acquisition, Defender hired Everest to implement an enterprise resource planning software (ERP) system to help run their operations. On October 31, 2008, Defender and Everest entered into a software implementation agreement to govern the implementation of the ERP system (the Agreement). *See* Agreement, Exhibit A. The Agreement contains an arbitration clause at section 9.6, which provides for AAA arbitration in Philadelphia (applying Virginia law). The only signatories to the Agreement are Everest and Defender. *Id.* at page 8.

19. Everest was then acquired by ESW in 2009, as discussed above, and began working with the Versata Parties to streamline its operations shortly thereafter. However, at no point did ESW or the Versata Parties "assume," "take over" or in any way interfere with the Agreement or any of Everest's obligations under the Agreement.

20. During the course of the implementation, Defender failed to make good on several payments owed to Everest under the Agreement. On October 31, 2011, Everest initiated arbitration against Defender before the AAA in Philadelphia,

pursuant to section 9.6 of the Agreement, bringing claims for breach of contract and fraudulent inducement without intent to perform. *See* Everest Demand for Arbitration, Exhibit E.

21. On January 16, 2012, Defender answered Everest's claims in the Philadelphia arbitration and also brought counterclaims against Everest. *See* Defender Answering Statement & Counterclaims, Exhibit B. In its counterclaims, Defender also indiscriminately named as respondents a wide swath of entities affiliated with Everest in Austin, Texas—the Versata Parties.

22. Nine of Defender's ten counterclaims were brought against the Versata Parties. Again, the Versata Parties never signed the Agreement. And, although these entities are "affiliated" with Everest and do, from time to time, work with Everest as discussed above, their affiliation is nevertheless loose. The Versata Parties share a common, ultimate owner with Everest, but none of the Versata Parties is directly related to Everest.

23. What makes Defender's actions most egregious is that, in indiscriminately naming the Versata Parties as counterclaim-respondents in the arbitration, Defender conflated all of them as one, imaginary entity called "Versata." *See* Defender Answering Statement & Counterclaims, Exhibit B at page 10. Defender, in lumping all the Versata Parties together as one and claiming that they all belonged in the Philadelphia arbitration together, stated:

> On August 9, 2009, Versata announced that it had acquired Everest. A copy of Versata's press release announcing the acquisition is annexed as <u>Exhibit B</u> hereto. Following its acquisition of Everest, Versata exercised dominion and control over all activities of Everest in

> connection with the Services Agreement. Versata stepped into the shoes of Everest, controlled all Everest's activities, and assumed all of Everest's obligations with respect to Defender Industries by, *inter alia*, (i) acquiring and administering the Everest-Defender Industries' agreements; (ii) appointing "Versata veteran" Danielle Royston as Chief Executive Officer of Everest (in addition to retaining her role at Versata and at other companies acquired by Versata); (iii) controlling all Everest operations, including communications with Defender Industries regarding the ongoing Everest software development and implementation project; (iv) firing or otherwise causing the departure of nearly all members of the Everest team who had been working on the Defender Industries project; (v) outsourcing many of the technology development functions formerly handled by Everest personnel or contractors experienced with the Defender Industries project to alternative Versata contractors and/or employees based in India and other locations; (vi) taking over the attempted correction of at least 600 bugs in the Everest software that Versata had identified and promoted in the acquisition due diligence and post-due diligence process; (vii) unilaterally placing Defender Industries into the Versata WOW software support system; (viii) running the Defender Industries project through a consultant retained by Versata and who, upon information and belief, utilized Versata technology infrastructure and other resources to perform the services which Everest was under contract to perform for Defender Industries; and (ix) addressing Defender Industries-related financial and legal issues through Versata financial and legal personnel working out of offices shared between Everest and Versata.

*Id.* at 13-14.

24. In a nutshell, Defender argued it had grounds to rope the Versata Parties into the Philadelphia arbitration because, allegedly, the Versata Parties (apparently as one, monolithic group) "acquired Everest," began controlling its activities and, a result, "assumed" the Agreement.

25. Defender's rationale suffers from both factual and legal defects. First, it was not the Versata Parties that acquired Everest. It was ESW, a company that shares a common owner with the Versata Parties, but nevertheless is a distinct

corporate entity. This fact alone cuts heavily against the notion that the Versata Parties somehow took "control" over Everest. Second, Defender's allegations that the Versata Parties somehow "controlled" Everest are not enough to show that the Versata Parties, as non-signatories, can be compelled to participate in the Philadelphia arbitration. While it is true that the Versata Parties work with companies like Everest to help them improve their processes and their products, it does not mean that the Versata Parties "control" them. It also does not mean, more importantly, that the Versata Parties "assumed" any obligations under the Agreement.

26. Moreover, by ignoring the fact that the Versata Parties are distinct corporations, Defender ascribed the alleged acts and omissions quoted above as to all of the Versata Parties uniformly, as though they were a single entity. The Versata Parties are four distinct corporations, each with different business functions, employees, officers and legal obligations. Surely Defender was not alleging that all four of the Versata Parties controlled Everest and assumed the Agreement. Rather, it appears that Defender's strategy was to name as many parties as it could, without any basis for bringing them into the arbitration, hoping to gain leverage over Everest and the Versata Parties.

27. Despite Defender's tactics, the AAA decided that the Versata Parties were not proper respondents in the Philadelphia arbitration. On January 25, the AAA explained that the counterclaims brought against the Versata Parties would

not be administered by the AAA, but that the issue could brought up with the arbitrator once he was appointed:

> Inasmuch as the parties are not in agreement regarding Respondent-Counterclaimant, the Association will not proceed with administration of Respondent's Counterclaimant Claim at this time. The parties may wish to raise this is to the arbitrator, upon appointment. Accordingly, Respondents may wish to revise their Answer and Counterclaim in order to remove the Counterclaimants. At that time, the Association will access the appropriate filing fee associated with the Counterclaim.

*See* January 25 AAA Email, Exhibit F.

28. On January 27, just before the arbitrator was appointed, Defender finally decided to amend its counterclaims, dropping the Versata Parties. *See* Defender Amended Answering Statement & Counterclaims, Exhibit C. However, Defender made clear that it was reserving the right to bring those claims against the Versata Parties in the future:

> Please note that Defender Industries has removed all non-Everest Versata-related entities as named parties in the Amended Counterclaims. However, Defender Industries reserves all rights and remedies against Versata and Versata-related entities, and the removal of such entities as named parties from Defender Industries' Amended Counterclaims is without prejudice to any such rights and remedies.

*See* January 27 Defender Email to AAA, Exhibit D.

29. Accordingly, the Versata Parties are seeking a declaration from this Court confirming that they are not proper parties to the arbitration and, further, that Defender's claims are meritless and fail in any forum—whether brought in arbitration or in court.

## V.
## CAUSES OF ACTION FOR DECLARATORY RELIEF

### Count I:
### Versata Parties Not Proper Parties to Arbitration

30. All of the paragraphs in this Complaint are incorporated herein as if set forth in full.

31. "The FAA[3] directs courts to place arbitration agreements on equal footing with other contracts, but it 'does not require parties to arbitrate when they have not agreed to do so.' . . . Because the FAA is 'at bottom a policy guaranteeing the enforcement of private contractual arrangements,' we look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement . . . we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated. 'Arbitration under the [FAA] is a matter of consent, not coercion.'" *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293-294 (U.S. 2002) (internal citations omitted).

32. "Arbitration agreements [subject to the FAA] apply to nonsignatories only in rare circumstances." *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 358 (5th Cir. 2003). "Federal courts have recognized six theories, arising out of common principles of contract and agency law, that may bind non-signatories to arbitration agreements: (1) incorporation by reference; (2) assumption; (3)

---

[3] The Agreement, a contract entered into between a Connecticut corporation, Defender, and a company based in Pennsylvania at the time, Everest, without question "affects" and "involves" interstate commerce. *See Allied-Bruce Terminex Cos., Inc. v. Dobson*, 513 U.S. 265, 286 (1995); *see also* 9 U.S.C. § 2. Therefore, the Federal Arbitration Act (FAA) applies to the arbitration clause in the Agreement.

agency; (4) alter ego; (5) equitable estoppel, and (6) third-party beneficiary." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005); *see also Bridas*, 345 F.3d at 356.

33.     It appears that Defender has raised the "assumption" theory as to the Versata Parties. In order for a non-signatory to be bound to an arbitration agreement under this theory, the non-signatory must exhibit "conduct [that] indicates that it is *assuming the obligation to arbitrate*." *Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 777 (2d Cir. N.Y. 1995) (emphasis added). *See also ACE Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 192 (S.D. Tex. 2008). None of the Versata Parties has exhibited any such conduct.

34.     Although the Versata Parties did indeed work with Everest to help improve Everest's software product and services, at no time did the Versata Parties "assume" Everest's contractual obligations, let alone its "obligation to arbitrate." There is simply no evidence of that.

35.     Defender merely asserts that the Versata Parties acquired Everest (which they did not) and that they, essentially, began "controlling" Everest's activities (which they also did not do). Defender's chief complaint in that regard is that, after the acquisition by ESW, officers from the Versata Parties like Danielle Royston became officers at Everest. But, the actions of Everest officers in their capacity as Everest officers are the actions of Everest. Period. Defender assumes that because Danielle Royston (who became the CEO of Everest) also had a role at

one of the Versata Parties, somehow the Versata Parties were "controlling" Everest. But, again, there is no evidence of that.

36. Importantly, the United States Supreme Court has held that the question of whether a party has agreed to submit to arbitration is a question for the court, not the arbitrator, to decide: "a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84 (U.S. 2002). Therefore, this Court, not the arbitrator, should decide whether the Versata Parties are proper parties to the Philadelphia arbitration under the Agreement.

37. And, the presumption in favor of arbitration under the FAA is reversed when there is a question about whether claims are even subject to a valid arbitration agreement, as the case is here. *First Options v. Kaplan*, 514 U.S. 938, 944-945 (U.S. 1995). In other words, it is Defender that must prove to this Court that the Versata Parties are proper respondents in the Philadelphia arbitration, not the other way around.

38. So, as outlined herein, the Versata Parties are not proper parties to the Philadelphia arbitration because they are not signatories to the Agreement. Moreover, they do not meet the test for being subject to arbitration as non-signatories. Therefore, the Versata Parties request that this Court enter a declaratory judgment confirming that they are not proper parties to the Philadelphia arbitration.

**Count II:**
**Defender's Fraud Claim Lacks Merit**

39. All of the paragraphs in this Complaint are incorporated herein as if set forth in full.

40. Defender, in its pre-amended counterclaims, brought an action for fraud against the Versata Parties in connection with alleged representations made about the ERP software system implemented by Everest. *See* Defender Answering Statement & Counterclaims, Exhibit B at page 52. The Versata Parties did not make representations about the ERP system. Any representations made, if any, were made by Everest. Defender has no evidence showing otherwise. This claim therefore fails and the Versata Parties seek a declaration that this claim lacks merit and, further, that the Versata Parties have no liability whatsoever in connection with this claim—whether later brought in the Philadelphia arbitration or in court.

**Count III:**
**Defender's Breach of Contract Claim Lacks Merit**

41. All of the paragraphs in this Complaint are incorporated herein as if set forth in full.

42. Defender contends, in its pre-amended counterclaims, that the Versata Parties breached the Agreement. *See* Defender Answering Statement & Counterclaims, Exhibit B at page 53. The Versata Parties were not parties to the Agreement and thus could not have breached it. This claim therefore fails and the Versata Parties seek a declaration that this claim lacks merit and, further, that the

Versata Parties have no liability whatsoever in connection with this claim—whether later brought in the Philadelphia arbitration or in court.

**Count IV:**
**Defender's Warranty Claim Lacks Merit**

43. All of the paragraphs in this Complaint are incorporated herein as if set forth in full.

44. Defender contends, in its pre-amended counterclaims, that the Versata Parties breached warranties under the Agreement. *See* Defender Answering Statement & Counterclaims, Exhibit B at page 53. Again, the Versata Parties were not parties to the Agreement and thus could not have breached it, nor could they have made warranties under the Agreement. This claim therefore fails and the Versata Parties seek a declaration that this claim lacks merit and, further, that the Versata Parties have no liability whatsoever in connection with this claim—whether later brought in the Philadelphia arbitration or in court.

**Count V:**
**Defender's Unjust Enrichment Claim Lacks Merit**

45. All of the paragraphs in this Complaint are incorporated herein as if set forth in full.

46. Defender contends, in its pre-amended counterclaims, that the Versata Parties were unjustly enriched by taking payments under the Agreement. *See* Defender Answering Statement & Counterclaims, Exhibit B at page 55. Again, the Versata Parties were not parties to the Agreement. They also did not accept payments under the Agreement. This claim therefore fails and the Versata Parties

seek a declaration that this claim lacks merit and, further, that the Versata Parties have no liability whatsoever in connection with this claim—whether later brought in the Philadelphia arbitration or in court.

**Count VI:**
**Defender's Tortious Interference Claim Lacks Merit**

47. All of the paragraphs in this Complaint are incorporated herein as if set forth in full.

48. Defender contends, in its pre-amended counterclaims, that the Versata Parties tortiously interfered with the Agreement. *See* Defender Answering Statement & Counterclaims, Exhibit B at page 56. As outlined above, there is no evidence of that. The Versata Parties, if anything, assisted Everest in its operations and its product offerings—and nothing more. This claim therefore fails and the Versata Parties seek a declaration that this claim lacks merit and, further, that the Versata Parties have no liability whatsoever in connection with this claim—whether later brought in the Philadelphia arbitration or in court.

**Count VII:**
**Defender's Quantum Meruit Claim Lacks Merit**

49. All of the paragraphs in this Complaint are incorporated herein as if set forth in full.

50. Defender contends, in its pre-amended counterclaims, that the Versata Parties are liable for quantum meruit in connection with the software Everest developed for Defender. *See* Defender Answering Statement & Counterclaims, Exhibit B at page 57. Incredibly, Defender's theory is that Defender provided

Everest and the Versata Parties with "services" that they did not pay for. Defender's claim borders on the absurd. Defender never provided Everest, let along the Versata Parties, with any "services" whatsoever. Defender has tried to turn Everest's arbitration claim on its head in making this allegation, as it was Defender that never paid for the services Everest rendered—which is why Everest brought the Philadelphia arbitration in the first place. This claim should be dismissed out of hand because it cannot be supported by any evidence. This claim therefore fails and the Versata Parties seek a declaration that this claim lacks merit and, further, that the Versata Parties have no liability whatsoever in connection with this claim—whether later brought in the Philadelphia arbitration or in court.

**Count VIII:**
**Defender's Unfair Business Practices Claim Lacks Merit**

51. All of the paragraphs in this Complaint are incorporated herein as if set forth in full.

52. Defender contends, in its pre-amended counterclaims, that the Versata Parties are liable for "unfair business practices" under the Virginia Consumer Protection Act in connection with alleged representations made about the ERP software system and the Agreement. *See* Defender Answering Statement & Counterclaims, Exhibit B at page 57. Again, the Versata Parties made no representations about the Agreement or the product or any services to be delivered under the Agreement. Further, they were not parties to the Agreement. This claim therefore fails and the Versata Parties seek a declaration that this claim lacks merit

and, further, that the Versata Parties have no liability whatsoever in connection with this claim—whether later brought in the Philadelphia arbitration or in court.

**Count IX:**
**Defender's Unfair Trade Practices Claim Lacks Merit**

53. All of the paragraphs in this Complaint are incorporated herein as if set forth in full.

54. Defender contends, in its pre-amended counterclaims, that the Versata Parties are liable for "unfair trade practices" under the Connecticut Unfair Trade Practices Act in connection with alleged representations made about the ERP software system and the Agreement (and other alleged wrongful acts). *See* Defender Answering Statement & Counterclaims, Exhibit B at page 58. Again, the Versata Parties made no representations about the Agreement or the product or any services to be delivered under the Agreement—nor did they commit any other wrongful acts. Further, they were not parties to the Agreement. This claim therefore fails and the Versata Parties seek a declaration that this claim lacks merit and, further, that the Versata Parties have no liability whatsoever in connection with this claim—whether later brought in the Philadelphia arbitration or in court.

**Count X:**
**Defender's Good Faith Claim Lacks Merit**

55. All of the paragraphs in this Complaint are incorporated herein as if set forth in full.

56. Defender contends, in its pre-amended counterclaims, that the Versata Parties are liable for breaching the covenant of good faith and fair dealing in

connection with the Agreement. *See* Defender Answering Statement & Counterclaims, Exhibit B at page 60. Assuming this is even a cognizable claim under Philadelphia law, the Versata Parties were not parties to the Agreement and have no "good faith" obligations to Defender in that connection. This claim therefore fails and the Versata Parties seek a declaration that this claim lacks merit and, further, that the Versata Parties have no liability whatsoever in connection with this claim—whether later brought in the Philadelphia arbitration or in court.

## VI.
## RELIEF SOUGHT

57. Plaintiffs respectfully request, under FRCP 57 and 28 U.S.C. § 2201, a declaratory judgment from this Court finding that:

- the Versata Parties are not proper parties to the Philadelphia arbitration (as requested in Count I); and

- all of Defender's arbitration claims brought against the Versata Parties in its pre-amended counterclaim are without merit and that, further, the Versata Parties have no liability in connection with those claims, regardless of where they have been or will be brought in the future (as requested in Counts II through X);

58. If this Court does not grant the declaratory relief sought herein, the Versata Parties will be forced to defend a costly arbitration in Philadelphia and will lose their right to a trial by jury. The Versata Parties did not agree to arbitrate claims with Defender and should not be required to do so. Moreover, even if these claims are later brought in court, the Versata Parties have no liability in connection with those claims to begin with.

59. In addition, Plaintiffs also seek their attorneys' fees and costs incurred in connection with this action, as would be available under state law and therefore here, and all other relief to which the Court deems Plaintiff is entitled.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that upon final hearing and trial hereof, this Court grant all relief requested above as well as any such additional relief as the Court may deem just and proper.

Dated: February 6, 2012

Respectfully submitted,

AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING PC

*/s/ Demetrios Anaipakos*
Demetrios Anaipakos
State Bar No. 00793258
Federal No. 20323
*Attorney-in-Charge*
Amir Alavi
State Bar No. 00793239
Federal No. 20919
Kinan H. Romman
State Bar No. 24054579
Federal No. 899168
1221 McKinney St., Suite 3460
Houston, Texas  77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062
danaipakos@azalaw.com

ATTORNEYS FOR PLAINTIFFS